UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD AMBROSE and
CHARLES AMBROSE,                              Case No.
                                             Hon.

      Plaintiffs,

v.

ORCHARD LAKE SCHOOLS, a Michigan nonprofit corporation,
REVEREND MIROSLAW KROL, an individual,
MARCUS SHEENA, an individual, BOB PYLES, an individual,
RICH RYCHCIK, an individual, and TODD COVERT, an individual,

      Defendants.

PITT, MCGEHEE, PALMER BONANNI
& RIVERS PC
Robert W. Palmer (P31704)
Beth M. Rivers (P33614)
Channing Robinson-Holmes (P81698)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
Tel: (248) 398-9800
rpalmer@pittlawpc.com
brivers@pittlawpc.com
crobinson@pittlawpc.com

## COMPLAINT AND JURY DEMAND

NOW COME Plaintiffs Donald Ambrose and Charles Ambrose (collectively "Plaintiffs"), by and through their attorneys, Pitt McGehee Palmer Bonanni & Rivers P.C., bring this Complaint and in support thereof states as follows:

## Introduction

1.      This is an action for sex discrimination and wrongful discharge brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.,* and Michigan's Elliott-Larsen Civil Rights Act, MCL 37.2701, *et seq.*, stemming from Charles Ambrose's assault while on a school sponsored retreat, Defendants' indifference to Charles Ambrose's assault, Plaintiff Donald Ambrose's fervent objections to Defendants' failure to take any investigative or remedial action, and Donald Ambrose's consequent retaliatory termination.

## Jurisdiction, Venue, and Parties

2.      The jurisdiction of this Court over this controversy is based on 28 U.S.C. §1331, to enforce the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1683.

3.      This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 to address the claims brought under Michigan's common law and Elliott-Larsen Civil Rights Act, MCL 37.2701, *et seq.*, because they are so related to the federal law claims that they form part of the same case or controversy.

4.      Venue is appropriate in this judicial district as the events giving rise to this action occurred in this district and all parties reside in or operate within this district.

5.      Defendant Orchard Lakes Schools is a non-profit corporation organized and existing under the laws of the State of Michigan, which operates a Catholic, all-boys college preparatory high school, called St. Mary's Preparatory High School ("St. Mary's Preparatory"), located in Orchard Lake, Michigan.

6.      Defendant Miroslaw Krol is a priest and the Chancellor and Chief Executive Officer of Orchard Lake Schools, where he has served in that role since 2017.

7.      Defendant Marcus Sheena ("Sheena") is employed by Orchard Lake Schools as the Campus Minister and a Hockey Coach at St. Mary's Preparatory.

8.      Defendant Bob Pyles ("Pyles") is employed by Orchard Lake Schools as the Headmaster at St. Mary's Preparatory.

9.      Defendant Rich Rychcik ("Rychcik") is employed by Orchard Lake Schools as the Dean of Students at St. Mary's Preparatory.

10.      Defendant Todd Covert ("Covert") is employed by Orchard Lake Schools as the Chief Operating Officer.

11.      At the time of the assault, Plaintiff Charles Ambrose was 16 years old and a high school student at St. Mary's Preparatory.

12.    Plaintiff Donald Ambrose is the father to Charles Ambrose and is a former long-time teacher at St. Mary's Preparatory having worked there from 1996 to May of 2019.

## Statement of Facts

13.    In 1996, Plaintiff Donald Ambrose began his long, distinguished tenure as a Teacher at St. Mary's Preparatory teaching Literature.

14.    Throughout his career, Donald Ambrose was a highly rated Teacher and well-liked by students and peers alike.

15.    In 2016, Mr. Ambrose's son, Plaintiff Charles Ambrose, began his freshman year at St. Mary's Preparatory.

16.    Charles Ambrose excelled academically and, by his junior year, was in line to be the valedictorian of his class.

17.    Charles Ambrose was also well-liked by students and staff earning him the Student of the Year award for both his freshman and sophomore years.

## Charles Ambrose is Assaulted at Kairos Retreat

18.    From March 19, 2019 to March 22, 2019, Charles Ambrose attended a school-sponsored Kairos retreat with his peers at the Columbiere Retreat Center in Clarkston, Michigan.

19.    Charles Ambrose was one of just three juniors at St. Mary's Preparatory asked to attend the retreat. The remaining 30 or so student-attendees were seniors.

20.    Defendant Sheena organized and functioned as the chief supervisor of the Kairos retreat, along with two female school employees.

21.    Upon information and belief, many of the student-attendees were hockey players who played, or had played, under Defendant Sheena.

22.    At the outset of the retreat, Sheena advised the two female chaperones not to venture onto the floor the students were staying on as they might "run into naked boys."

23.    In the evenings, Charles Ambrose's peers were engaging in inappropriate and sexualized "games."

24.    One such "game" the students played was called "Naked Bowling" in which they would undress in the large locker room style shower, coat the shower with soap and water, and roll or throw a naked student onto the floor in order to topple the standing naked students acting as "pins."

25.    This would and could cause the participants' genitals to come in contact with other participants' naked bodies.

26.    Another "game" the students played was called "Stanky Pretzel" in which a student would sit, naked, on another student's face.

27.     Members of the high school's hockey team, including those on the Kairos retreat, often "played" these "games" in the high school locker room and in the hockey arena's locker rooms.

28.     Sheena, as a Hockey Coach, was aware of and condoned the student athletes on the hockey team instigating these sexualized "games."

29.     Retreat chaperone Sheena was likewise aware of the inappropriate and sexual contact taking place each evening at the Kairos event and failed to take any action to prevent these activities from occurring.

30.     Kairos retreat chaperones were or should have been aware of the inappropriate and sexualized activities taking place each evening, had they not been warned by Sheena to keep away from the boys' floor in order to avoid seeing "naked boys."

31.     These inappropriate, sexualized activities at the Kairos retreat had taken place in other years with the full knowledge of the St. Mary's Preparatory administration, including but not limited to Defendant Sheena.

32.     The St. Mary's Preparatory administration has failed to take prompt and remedial action to remedy and prevent sexual contacts from occurring in its locker room, at its hockey arena, and on the Kairos retreats.

33.     The St. Mary's Preparatory administration's failure to take prompt and remedial action to remedy and prevent these sexualized activities from

occurring on school grounds or school retreats has created an environment in which such sexual, inappropriate behavior and harassment are tolerated and treated with deliberate indifference by Defendants.

34.    The administration at St. Mary's Preparatory purposefully provided few chaperones to the Kairos retreat further exposing Charles Ambrose to the aforementioned sexual behavior and harassment by his peers.

35.    The chaperones' ability to effectively chaperone was limited by Defendant Sheena's direction to not go on the floor where the boys were lodged further exposing Charles Ambrose to unwanted sexual contact and harassment.

36.    On the evening of March 19, 2019, Charles Ambrose heard a raucous commotion coming from the shared bathroom on the boy's floor.

37.    The following morning, March 20, 2019, Charles Ambrose took a shower in the shared bathroom on the boy's floor and observed soap residue and standing water everywhere.

38.    Later that day, a number of the student-attendees on the trip openly discussed, in hearing range of the retreat's chaperones, including Sheena, that they had "played" Naked Bowling and Stanky Pretzel in the boy's bathroom.

39.    Charles Ambrose had no interest in participating in these evening activities, as set forth above.

40.     On the evening of March 20, 2019, the second night of the Kairos retreat, eight or more of Charles Ambrose's peers ran down the hall yelling, "let's get Ambrose!" then loudly and aggressively entered Charles Ambrose's room as he lay in bed wearing only his boxers.

41.     Upon entering Charles Ambrose's room, the students were dressed only in towels.

42.     The students proceeded to grab at Charles Ambrose attempting to simultaneously undress him and drag him into the hall as he attempted to fend them off.

43.     The students forcibly grabbed Charles Ambrose's arms, legs, and bare chest and thighs.

44.     Charles Ambrose's attackers were attempting to undress him and physically force him, naked, to engage in the sexualized "games" they had discussed earlier that day.

45.     Feeling this to be a physical, sexualized attack, Charles Ambrose instinctually turned his back on his attackers and further attempted to block his genitalia from being touched.

46.     After several minutes of chaotic struggle between Charles Ambrose and the eight intruders, the group relented and left Charles Ambrose's room.

47.    Charles Ambrose was severely distressed by this altercation suffering from anxiety, trouble sleeping, trouble focusing, and emotional distress.

48.    Sheena was aware of what had transpired in Charles Ambrose's room on the evening of March 20th.

49.    On March 21, 2019, the morning after the assault, Sheena spontaneously approached Charles Ambrose and advised that, despite his directive at the onset of the retreat, he could lock his door that evening for protection.

50.    During the course of the day on March 21st, several of the March 20th assailants whispered to Charles Ambrose, "We are going to get you tonight!" causing Charles Ambrose further anxiety and distress.

51.    Because of his emotional distress and fear of another sexual attack, Charles Ambrose approached Sheena later that day under the excuse that he had a stomachache to which Sheena responded by providing him with an Aspirin and directing him to go to bed.

52.    When Charles Ambrose got to his room, he locked his door and further barricaded it with his chair and bed in order to prevent his attackers from making good on their threats.

53.     That night, Charles Ambrose heard students banging on his door and attempting to break into his room, causing him further stress and anxiety.

54.     Charles Ambrose's distress was visible to his parents when they picked him up two days later on March 22, 2019 at the conclusion of the retreat.

55.     Observing Charles Ambrose's distress, Mr. and Mrs. Ambrose asked Charles Ambrose the reason for his distress. Charles Ambrose relayed the events from the evening of March 20, 2019 to his parents.

### Donald Ambrose Complains of March 20, 2019
### Assault and Differential Treatment

56.     St. Mary's Preparatory newly appointed Headmaster Bob Pyles ("Pyles"), Dean of Students Rich Rychcik ("Rychcik"), and Eleventh Grade Academic Dean Sean Clouse ("Clouse") were made aware of the March 20, 2019 assault against Charles Ambrose on or about March 26, 2019 or March 27, 2019.

57.     On March 27, 2019, a student who had attended the Kairos retreat with Charles Ambrose disclosed to St. Mary's Preparatory administrators that, while on the retreat, students were throwing soap at each other, taking each other's towels, and "doing human bowling in the showers."

58.     The same student likewise disclosed that fifteen to twenty student-attendees went into Charles Ambrose's room during the Kairos retreat and were yelling and jumping.

59.    On March 27, 2019, at around 2:00 p.m., Pyles, Rychcik, and Clouse called Charles Ambrose into the office and interrogated him about the March 20, 2019 assault for approximately five minutes.

60.    Neither Pyles, Rychcik, nor Clouse advised Mr. Ambrose, who was working in the building at the time they questioned Charles Ambrose, that they intended to question Charles Ambrose about the assault.

61.    Neither Pyles, Rychcik, nor Clouse advised Charles Ambrose that he was entitled to have a parent present during questioning of the assault.

62.    After Pyles, Rychcik, and Clouse questioned Charles Ambrose, they questioned Donald Ambrose about the March 20, 2019 assault.

63.    Upon Donald Ambrose's recounting of the March 20, 2019 assault, as relayed to him by his son, the trio informed him that they had spoken with his son about the assault without the presence of a parent.

64.    Pyles then dismissed Charles Ambrose's assault, telling Donald Ambrose that the severity of the sexual assault of March 20, 2019 ranked at about a "5" on a scale of 1 to 10.

65.    Donald Ambrose attempted to leave the room after hearing this, but Rychcik and Pyles physically blocked the doorway and shouted at and ordered Donald Ambrose to "Sit down!"

66.     Distressed that the administration was dismissing his son's assault, apparently because his son was a male, Donald Ambrose pleaded with Pyles asking, "What if this happened to your daughter?"

67.     In response, Pyles grew enraged. He immediately drew in close to Donald Ambrose's face and while pointing his finger into Donald Ambrose's face threatened, "Don't go there! Don't you go there!"

68.     The Administration at St. Mary's Preparatory failed to take any effective action to investigate the March 20, 2019 assault or discipline any of the perpetrators.

69.     On April 3, 2019, Rychcik angrily confronted Donald Ambrose saying that he had received a voicemail from the father of one of the boys involved in the March 20, 2019 assault asking if Donald Ambrose was retaining an attorney and, therefore, needed to know Donald Ambrose's intentions. Donald Ambrose declined to commit himself either way.

70.     Upon hearing Donald Ambrose's response, Rychcik directed Donald Ambrose to return home.

### May 20, 2019
### Donald Ambrose Complains to Chancellor, Father Krol

71.     On May 20, 2019, after it had become all too apparent that Pyles and Rychcik did not intend to take any investigative action into the March 20,

2019 assault against Charles Ambrose, Donald Ambrose met with the Chancellor and Chief Executive Officer of Orchard Lake Schools, Father Miroslaw Krol.

72.     Donald Ambrose told Father Krol of the March 20, 2019 sexual assault and other general concerns he and the faculty shared about Pyles.

73.     In this conversation, Father Krol reassured Donald Ambrose that he would not be terminated if he told him everything.

74.     Unbeknownst to Donald Ambrose, Father Krol has engaged in a pattern and practice of quid pro quo sexual harassment with his subordinate seminarians, created and condoned a sexually hostile atmosphere within Orchard Lake Schools, and retaliated against those who rebuffed his advances or complained of his behavior, namely by terminating or removing individuals from their positions.

75.     Donald Ambrose's complaint of his son's sexual assault prompted Father Krol and the school's administration, including the defendants, to conspire and bring about his termination, akin to Father Krol's decisions to terminate and/or remove subordinates from their positions for complaining of his own inappropriate sexual behavior.

**May 29, 2019**
**Donald Ambrose Suffers Retaliatory Termination**

76.     Just nine days after Donald Ambrose complained to Father Krol, on May 29, 2019, Todd Covert ("Covert"), the Corporate Executive Officer of Orchard Lake Schools, asked Donald Ambrose into his office and promptly terminated his employment.

77.     Covert said Donald Ambrose's termination was due to parental complaints about Donald Ambrose not returning e-mails and an incident with a student Z.T. that occurred on March 25, 2019.

78.     The March 25th incident cited by Covert involved student Z.T. shouting a profanity, Donald Ambrose issuing him a detention, and student Z.T. attempting to unlock the classroom window, ostensibly to jump out.

79.     After the March 25th incident, student Z.T. apologized to Donald Ambrose for his behavior.

80.     Donald Ambrose did not receive any disciplinary action for the March 25, 2019 incident prior to his termination.

81.     The stated reasons for Donald Ambrose's termination are mere pretext for unlawful retaliation for Donald Ambrose complaining of the unlawful sexual assault perpetrated against his son, Charles Ambrose, and the deliberate indifference of the administration.

82.     Donald Ambrose's termination drew criticism from St. Mary's Preparatory alumni who knew him to be an exemplary teacher who made a lasting difference to his students' lives.

### Count I
### Discrimination in Violation of
### Title IX of the Education Amendments of 1972
**(Charles Ambrose v. Orchard Lake Schools)**

83.     Plaintiffs incorporate by reference all the above allegations as if they were fully stated herein.

84.     Defendant Orchard Lake Schools is subject to the prohibitions set forth in Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*., as an institution that receives federal financial assistance.

85.     Orchard Lake Schools had a duty under Title IX to refrain from discriminating against individuals on the basis of sex.

86.     Orchard Lake Schools had a duty under Title IX to take prompt and effective steps to prevent an actual or reasonably known risk of harassment or bullying from occurring.

87.     Orchard Lake Schools had a duty under Title IX to take immediate and appropriate steps to investigate or otherwise determine what occurred when it actually knew, or reasonably should have known, of the harassment that occurred on the Kairos retreat.

15

88.    Orchard Lake Schools had a duty under Title IX to take prompt and effective steps reasonably calculated to end the harassment or bullying, prevent its recurrence, and remedy its effects when it actually knew, or reasonably should have known, of the harassment that occurred on the Kairos retreat.

89.    Orchard Lake School, through its administrators, was actually aware or reasonably should have known of the sexualized behavior students participated in at the high school and on school retreats and reasonably should have known that students, including Charles Ambrose, were at risk.

90.    In violation of the above stated statutory duties, Orchard Lake Schools, with deliberate indifference, discriminated against Charles Ambrose by failing to protect him from a known risk of sex harassment and sexual violence and by failing to effectively investigate and take prompt remedial action into the incidents described above.

91.    As a proximate result of Orchard Lake Schools' unlawful actions, Charles Ambrose has and will continue to experience non-economic injuries including but not limited to extreme emotional distress, mental anguish, humiliation, and pain and suffering.

Accordingly, Charles Ambrose requests the following relief:

   a.    An Order of this Court awarding Charles Ambrose compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

16

b. Punitive damages;

c. An Order of this Court awarding Charles Ambrose interest, costs, and attorney fees; and

d. An Order of this Court awarding Charles Ambrose such other equitable relief as this Court deems just and equitable.

## Count II
## Retaliation in Violation of
## Title IX of the Education Amendments of 1972
### (Donald Ambrose v. Orchard Lake Schools)

92. Plaintiffs incorporate by reference all the above allegations as if they were fully stated herein.

93. Orchard Lake Schools is subject to the prohibitions set forth in Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq*., as an institution that receives federal financial assistance.

94. Orchard Lake Schools had a duty under Title IX to refrain from retaliating against employees who complain of unlawful sex discrimination.

95. In violation of the above stated statutory duty, Orchard Lake Schools intimidated and terminated Donald Ambrose because he complained of unlawful sex discrimination, namely Orchard Lake Schools' deliberate indifference to the sexual assault and harassment of his son, Charles Ambrose, at the hands of his fellow students.

96.     As a proximate result of Orchard Lake Schools' unlawful retaliation, Donald Ambrose has and will continue to experience economic losses in the nature of lost wages and fringe benefits as well as non-economic injuries including but not limited to extreme emotional distress, mental anguish, humiliation, and pain and suffering.

Accordingly, Donald Ambrose requests the following relief:

a.     An Order of this Court allowing Donald Ambrose reinstatement to a position with St. Mary's Preparatory;

b.     An Order of this Court awarding Donald Ambrose compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

c.     Punitive damages;

d.     An Order of this Court awarding Donald Ambrose interest, costs, and attorney fees; and

e.     An Order of this Court awarding Donald Ambrose such other equitable relief as this Court deems just and equitable.

### Count III
### Retaliation in Violation of
### Michigan's Elliott-Larsen Civil Rights Act
### (Donald Ambrose v. Defendants)

97.     Plaintiffs incorporate by reference all the above allegations as if they were fully stated herein.

98.    Defendants were employers and Donald Ambrose was an employee within the meaning of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). MCL 37.2201(a).

99.    Orchard Lake Schools and Father Krol had a statutory duty to refrain from retaliating against employees who oppose discrimination violative of the ELCRA. MCL 37.2701.

100.   In violation of the above statutory duty, Defendants terminated Donald Ambrose because he complained of unlawful sex discrimination, namely their willful and deliberate indifference to the sexual harassment and assault of his son, Charles Ambrose, at the hands of his fellow students.

101.   As a proximate result of Orchard Lake Schools and Father Krol's unlawful retaliation, Donald Ambrose has and will continue to experience economic losses in the nature of lost wages and fringe benefits as well as non-economic injuries including but not limited to extreme emotional distress, mental anguish, humiliation, and pain and suffering.

Accordingly, Donald Ambrose requests the following relief:

a.    An Order of this Court allowing Donald Ambrose reinstatement to a position with St. Mary's Preparatory;

b.    An Order of this Court awarding Donald Ambrose compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

c.    Punitive damages;

d.    An Order of this Court awarding Donald Ambrose interest, costs, and attorney fees; and

e.    An Order of this Court awarding Donald Ambrose such other equitable relief as this Court deems just and equitable.

**Count IV**
**Violation of Michigan's Elliott-Larsen Civil Rights Act**
**(Charles Ambrose v. Defendants)**

102.   Plaintiffs incorporate by reference all the above allegations as if they were fully stated herein.

103.   Defendant Orchard Lake Schools is an educational institution and the individual Defendants are agents of the Defendant educational institution within the meaning of the ELCRA, MCL 37.2401.

104.   At all times relevant hereto, Defendants had actual or constructive knowledge of the practice of sexualized "games" and assaults that occurred amongst this particular group of boys in locker room settings and/or on school-sponsored retreats and failed to take prompt and remedial action to prevent those sexual activities from occurring.

105.   At all times relevant hereto, Defendants had actual or constructive knowledge of the assault on Charles Ambrose and failed to take prompt and remedial action.

106.  Defendants violated the ELCRA and deprived Charles Ambrose of his civil rights by, among other thigs:

   a. Subjecting Charles Ambrose, because of his sex, to conduct of a physical and sexual nature, which had the purpose and/or effect of denying him the full benefit of the educational program of Orchard Lake schools;

   b. Allowing and/or failing to stop harassment of Charles Ambrose by students under the control of Defendants, which had the purpose and/or effect of denying him the full benefit of the educational program of Orchard Lake schools.

107.  Defendants' conduct was and is a proximate cause of Charles Ambrose's injuries, including emotional, psychological, and physical injuries, and the permanent and serious impairments of Charles Ambrose's academic and social development.

Accordingly, Charles Ambrose. requests the following relief:

   a.  An Order of this Court awarding Charles Ambrose compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

   b.  Punitive damages;

   c.  An Order of this Court awarding Charles Ambrose interest, costs, and attorney fees; and

d.      An Order of this Court awarding Charles Ambrose such other equitable relief as this Court deems just and equitable.

## Count V
## Negligence
**(Charles Ambrose v. Sheena)**

108.   Plaintiffs incorporate by reference all the above allegations as if they were fully stated herein.

109.   As the chaperone and chief organizer of the Kairos retreat, Defendant Sheena owed a duty of care to the student attendees at the retreat, including Charles Ambrose.

110.   Sheena violated his duty of care to Charles Ambrose when he disregarded the known risk of sex harassment and sexual violence to Charles Ambrose during the Kairos retreat, ordered the other chaperones off the boys floor, and allowed the boys under his charge to engage in naked bowling, to perform stanky pretzel, and to assault students in order to force them to participate.

111.   Sheena's negligence was and is a proximate cause of the injuries Charles Ambrose suffered as a result of the sexual assault described above, including emotional, psychological, and physical injuries, and the permanent and serious impairments of Charles Ambrose's academic and social development.

Accordingly, Charles Ambrose. requests the following relief:

b.  An Order of this Court awarding Charles Ambrose compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

c.  Punitive damages;

d.  An Order of this Court awarding Charles Ambrose interest, costs, and attorney fees; and

e.  An Order of this Court awarding Charles Ambrose such other equitable relief as this Court deems just and equitable.

**Count VI**
**False Imprisonment**
**(Donald Ambrose v. Rychcik and Pyles)**

112.  Plaintiffs incorporate by reference all the above allegations as if they were fully stated herein.

113.  On March 27, 2019, Rychcik and Pyles physically restrained Donald Ambrose and deprived him of his personal liberty and freedom of movement by physically blocking the doorway with the intention of confining him.

114.  At all relevant times, Donald Ambrose was conscious of his confinement.

115.  The actions of Rychcik and Pyles directly resulted in Donald Ambrose's actual confinement.

116.   The imprisonment and restraint were against Donald Ambrose's will.

117.   Donald   Ambrose's   confinement   was   intentional,   unlawful, unprivileged and without cause.

118.   The conduct of Rychcik and Pyles was and is a proximate cause of Donald Ambrose's injuries, including emotional and psychological injuries.

Accordingly, Donald Ambrose. requests the following relief:

    a.   An Order of this Court awarding Donald Ambrose compensatory damages in an amount in excess of $75,000.00 he is found to be entitled to;

    b.   Punitive damages;

    c.   An Order of this Court awarding Donald Ambrose interest, costs, and attorney fees; and

    d.   An Order of this Court awarding Donald Ambrose such other equitable relief as this Court deems just and equitable.

Respectfully submitted,

PITT, MCGEHEE, PALMER
BONANNI & RIVERS PC

By:  s/ Channing Robinson-Holmes
Robert W. Palmer (P31704)
Beth M. Rivers (P33614)
Channing Robinson-Holmes (P81698)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
Tel: (248) 398-9800
rpalmer@pittlawpc.com
brivers@pittlawpc.com
crobinson@pittlawpc.com

Dated: January 28, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Donald Ambrose, and
Charles Ambrose,                                    Case No.
                                                    Hon.

      Plaintiff,

v.

ORCHARD LAKE SCHOOLS, a Michigan nonprofit corporation,
REVEREND MIROSLAW KROL, an individual,
MARCUS SHEENA, an individual, BOB PYLES, an individual,
RICH RYCHCIK, an individual, and TODD COVERT, an individual,

      Defendants.

PITT, MCGEHEE, PALMER BONANNI
& RIVERS PC
Robert W. Palmer (P31704)
Beth M. Rivers (P33614)
Channing Robinson-Holmes (P81698)
Attorneys for Plaintiff
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
Tel: (248) 398-9800
rpalmer@pittlawpc.com
brivers@pittlawpc.com
crobinson@pittlawpc.com

## **DEMAND FOR JURY TRIAL**

Plaintiffs, Donald Ambrose and Charles Ambrose, by their attorneys,

PITT, MCGEHEE, PALMER BONANNI & RIVERS, hereby makes a formal demand

for a trial by jury of the facts and issues involved in this matter.

Respectfully submitted,

PITT, MCGEHEE, PALMER BONANNI & RIVERS PC

By:  s/ Channing Robinson-Holmes
     Robert W. Palmer (P31704)
     Beth M. Rivers (P33614)
     Channing Robinson-Holmes (P81698)
     Attorneys for Plaintiff
     117 W. Fourth Street, Suite 200
     Royal Oak, MI 48067
     Tel: (248) 398-9800
     rpalmer@pittlawpc.com
     brivers@pittlawpc.com
     crobinson@pittlawpc.com

Dated: January 28, 2021

JS 44 (Rev. 11/15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DONALD AMBROSE and CHARLES AMBROSE,

**(b)** County of Residence of First Listed Plaintiff   Oakland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Channing Robinson-Holmes (P81698)
Pitt McGehee Palmer Bonanni & Rivers PC
117 W. 4th Street, Ste. 200, Royal Oak, MI 48067
(248) 398-9800

## DEFENDANTS

ORCHARD LAKE SCHOOLS, REVEREND MIROSLAW KROL, MARCUS SHEENA, BOB PYLES, RICH RYCHCIK, and TODD COVERT,

County of Residence of First Listed Defendant   Oakland
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding     ☐ 2  Removed from State Court     ☐ 3  Remanded from Appellate Court     ☐ 4  Reinstated or Reopened     ☐ 5  Transferred from Another District *(specify)*     ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
20 U.S.C. § 1683

Brief description of cause:   Violation of Title IX of the Education Amendments of 1972

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   January 28, 2021

SIGNATURE OF ATTORNEY OF RECORD   s/ Channing Robinson-Holmes

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____